NOT RECOMMENDED FOR PUBLICATION
 File Name: 21a0355n.06

 Case No. 21-1253

 UNITED STATES COURT OF APPEALS
 FOR THE SIXTH CIRCUIT FILED
 Jul 20, 2021
 ) DEBORAH S. HUNT, Clerk
 UNITED STATES OF AMERICA,
 )
 Plaintiff-Appellee, )
 ) ON APPEAL FROM THE
 v. ) UNITED STATES DISTRICT
 ) COURT FOR THE EASTERN
 STEVEN D. DENT, aka James Walker, ) DISTRICT OF MICHIGAN
 Defendant-Appellant. )
 )

BEFORE: COLE, ROGERS, and MURPHY, Circuit Judges.

 ROGERS, Circuit Judge. In 2013, Steven Dent pleaded guilty to conspiracy to distribute

cocaine and was sentenced to the mandatory-minimum term of 20 years’ imprisonment. When

COVID-19 reached his prison facility, Dent filed a motion for compassionate release, arguing that

his pre-existing health conditions, coupled with the fact that the First Step Act reduced the statutory

minimum sentence for similar offenses, were extraordinary and compelling reasons that warranted

his early release. Dent also argued that the 18 U.S.C. § 3553(a) factors favored release because he

had not incurred any infractions in prison and had taken steps to complete his education. The

district court rejected each of these arguments in a thoughtful opinion. The court’s application of

the § 3553(a) factors alone provides a sufficient basis to conclude that the district court did not

abuse its discretion.
No. 21-1253, United States v. Dent

 The underlying conviction at issue stems from a series of events in 2007 and 2008.1 In

March 2007, Steven Dent was pulled over by the Michigan State Police. While stopped, Dent

presented a fake driver’s license containing a different name to the trooper, who became suspicious

and attempted to arrest Dent. Dent unsuccessfully tried to flee the scene and, in the process,

dragged a trooper beside his vehicle. The police were able to stop and secure Dent, after which

they searched Dent’s car and found 12.95 kilograms of cocaine. Dent was arrested and charged

with drug trafficking by the state of Michigan.

 After Dent was released from custody, he wanted to ensure that he would continue

receiving his supply of drugs. About one year later, DEA agents—who had been observing Dent

and monitoring his cell phone—believed Dent would be acquiring a half-kilogram of heroin or

cocaine. In June 2008, Dent was stopped by a Michigan sheriff’s department as he traveled from

Indiana back to Michigan, where he intended to distribute the 472 grams of heroin he had picked

up in Indiana. On June 20, authorities executed a search warrant at an apartment associated with

Dent and seized a digital scale, a kilogram press, and pink “Dormin” capsules, often added to

heroin as a cutting agent. Authorities also found Western Union money order receipts for amounts

ranging from $1.64 to $1,000.

 Although Dent had indicated he would cooperate with law enforcement’s investigation, he

instead fled the state and was found in Arizona living under an alias four years later. Dent was

indicted for two counts of conspiracy to distribute a controlled substance, in violation of 21 U.S.C.

§ 846; one count of possession with intent to distribute a controlled substance, in violation of

21 U.S.C. § 841; and more than one hundred counts of laundering of monetary instruments, in

1
 The facts in the following three paragraphs are summarized by the government in its brief, with citations to the
Presentence Report, and also summarized by the district court in its opinion declining to issue a certificate of
appealability after denying Dent’s habeas motion. These facts are not disputed by Dent in this appeal.

 -2-
No. 21-1253, United States v. Dent

violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) & (ii). In August 2013—after Dent had been captured

and initially pleaded not guilty to the offenses—Dent changed his plea to guilty to one count of

conspiracy to distribute cocaine as part of a Rule 11 Plea Agreement. The remaining counts were

dismissed.

 Given Dent’s lengthy history of prior drug convictions, the government had the opportunity

to seek a mandatory minimum sentence of life imprisonment. Instead, as part of the plea

agreement, the government filed an information regarding prior convictions under 21 U.S.C.

§ 851(a), citing only one of his prior convictions (instead of identifying his two prior drug

offenses). This subjected Dent to a mandatory-minimum term of imprisonment of only twenty

years rather than life, and the government did not seek a higher sentence. The sentencing judge

held two hearings in March and April 2014 and sentenced Dent to 240 months’ imprisonment.

This sentence was substantially lower than Dent’s Guidelines range of 262 to 327 months’

imprisonment.

 Dent filed a pro se motion for compassionate release in late 2020. As relevant to this

appeal, Dent argued that extraordinary and compelling reasons warranted his release, citing the

“escalating COVID-19 crisis” in federal prisons and his underlying health conditions—diabetes

and obesity. Dent further argued that the § 3553(a) factors favored his release, emphasizing his

incident-free prison record and his efforts to complete educational programs. The motion was

referred to a different judge than the sentencing judge, who then appointed counsel to represent

Dent and directed the government to respond.

 The government agreed that Dent’s medical records establish he has type 2 diabetes and

obesity and that his circumstances thus qualify as “extraordinary.” It noted, however, that Dent’s

diabetes was “well controlled” and that in his compassionate release request to the Bureau of

 -3-
No. 21-1253, United States v. Dent

Prisons (BOP), Dent had described himself as “healthy.” The government disputed that Dent’s

circumstances qualified as “compelling,” pointing to Dent’s history of fleeing from law

enforcement. It also argued that Dent’s description of prison conditions was outdated and that the

risk of contracting COVID-19 had decreased; at the time the government filed its response, the

prison in which Dent is housed, FCI Elkton, “report[ed] 3 positive inmate cases among a

population of over 1000 inmates.” The government also argued that the § 3553(a) factors weighed

against compassionate release, pointing to Dent’s “long remaining sentence” and the fact that Dent

could have been sentenced to life based on his criminal history. Dent, through appointed counsel,

filed a reply arguing the district court had the discretion to determine what constitutes an

“extraordinary and compelling” circumstance. As part of this analysis, Dent’s counsel argued, the

court should consider that Dent would face only a 15-year mandatory-minimum sentence if he

were sentenced today. Counsel elaborated on Dent’s health risks at Elkton and highlighted Dent’s

progress in prison in an effort to show that Dent is no longer dangerous and is at a low risk of

recidivism.

 The district court acknowledged the government’s concession that obesity and type 2

diabetes increase the risk of complications for individuals who may contract COVID-19. It

concluded, however, that despite such risk factors, Dent did not show that his circumstances were

extraordinary and compelling because “the overall picture of the pandemic’s progress at his facility

has altered the landscape from one that was even very recently much more alarming, to a situation

that is at present decidedly less so.” The court found that the likelihood of a severe outbreak had

been diminished and would continue to diminish as the BOP maintains its “rapid deployment of

newly available vaccines, which so far have been administered fully to 175 staff and 21 inmates

[at] Elkton.” Alternatively, the court held, even if Dent had shown extraordinary and compelling

 -4-
No. 21-1253, United States v. Dent

circumstances, the § 3553(a) factors weighed heavily against his release. The court emphasized

the seriousness of the offense, noting that Dent not only had 13 kilograms of cocaine in his car

when he was stopped in 2007, but also provided the police with a false identification, attempted to

flee, and dragged one of the officers alongside the car. The court was also troubled by Dent’s

lengthy criminal history, which included crimes committed even while Dent was under supervision

and “prior serious drug felonies.” Referring to the record at the initial sentencing, the court noted

that Dent’s sentence “was driven by the 20-year mandatory minimum term” and the goal of

protecting the public. To permit Dent to serve less than half of his sentence would, the court

reasoned, “undermine the goals of both specific and general deterrence, which is of particular

concern with a defendant who repeatedly has shown his willingness to flout the law.” The court

concluded that Dent did not meet his burden of showing that compassionate release is justified.

 Dent appeals, challenging the district court’s risk determination as clearly erroneous and

the district court’s analysis under the § 3553(a) factors. Because the district court’s § 3553(a)

analysis is independently sufficient to affirm, we do not address Dent’s arguments regarding the

degree of medical risk or whether his circumstances are extraordinary or compelling. As we held

in United States v. Ruffin, 978 F.3d 1000, 1006 (6th Cir. 2020), we may affirm the denial of

compassionate release on the basis of the § 3553(a) factors alone.

 The district court considered the relevant § 3553(a) factors, including Dent’s “history and

characteristics,” before concluding that they “weigh[] heavily . . . against granting any reduction

in sentence” and “foreclose relief.” The court first described the circumstances surrounding the

offense of conviction, characterizing the crime as “serious.” The court then observed that it “was

only one episode of an extensive criminal history” and that Dent “has a history of committing other

crimes while on parole or supervision.” Indeed, the court emphasized that Dent’s history contained

 -5-
No. 21-1253, United States v. Dent

offenses “that featured prior prison terms of up to 40 years for other drug crimes.” Although the

court did not explicitly list “history and characteristics” as a specific prong, it clearly weighed such

factors.

 The court then explained the other § 3553(a) factors it found to be relevant: It recognized

that the initial sentence of 240 months’ imprisonment “was driven by the 20-year mandatory

minimum term” and was necessary to protect the public. It also thoughtfully explained how

“[r]educing [Dent’s] sentence to less than half of that mandatory minimum term” “would

undermine the goals of both specific and general deterrence,” particularly given Dent’s repeated

offenses.

 While the court could have said more, its analysis was certainly sufficient to avoid being

an abuse of discretion. An abuse of discretion occurs when the district court commits a clear error

of judgment or “relies on clearly erroneous findings of fact, uses an erroneous legal standard, or

improperly applies the law.” United States v. Flowers, 963 F.3d 492, 497 (6th Cir. 2020) (quoting

United States v. White, 492 F.3d 380, 408 (6th Cir. 2007)), reh’g denied (July 31, 2020). We do

not mandate that district courts “issue exhaustive opinions”; in fact, “even in the original

sentencing context,” we require only that the district court “leave enough of a record ‘to allow for

meaningful appellate review.’” United States v. Keefer, 832 F. App’x 359, 363 (6th Cir. 2020)

(quoting Chavez-Meza v. United States, 138 S. Ct. 1959, 1965 (2018)). The district court has done

so here. It explained that it remains concerned by Dent’s lengthy history of serious infractions and

inability to follow the law even while on supervised release. Dent’s attempts to evade the police

and his fleeing to Arizona speak volumes here. The district court obviously did not find Dent’s

recent progress in prison compelling, particularly as “his past criminal conduct and his repeated

 -6-
No. 21-1253, United States v. Dent

commission of other crimes while under supervision cast grave doubt on his inclination to be law

abiding and conform to the norms of society.” This is not a “barebones” analysis.

 Indeed, we have held that a mere one-sentence order denying release is not necessarily an

abuse of discretion. United States v. Quintanilla Navarro, 986 F.3d 668, 671 (6th Cir. 2021);

United States v. McGuire, 822 F. App’x 479, 479–80 (6th Cir. 2020). In cases where it was “clear

that the judge relied on the record when declining to modify [the defendant’s] sentence, even a

‘barebones form order’ . . . suffice[s].” McGuire, 822 F. App’x at 480 (quoting Chavez-Meza,

138 S. Ct. at 1968); see also Keefer, 832 F. App’x at 364. It is true that in these cases the sentencing

judge was the judge later denying compassionate release, so that if this were a “barebones” order

case, we might not have sufficient confidence that the later judge properly took into account the

factors relied upon by the sentencing judge. But this case is not a “barebones” case, and the second

district court, in its careful analysis, referred specifically to the record before the sentencing judge.

 Dent argues in particular that the district court was required to respond explicitly to his

arguments regarding his good conduct in prison. This was not necessary as long as it is clear

enough from the record that the court took such conduct into account. See Quintanilla Navarro,

986 F.3d at 672; McGuire, 822 F. App’x at 480. A “district court does not abuse its discretion

simply by failing to explicitly address each individual argument put forward by the defendant in

support of a sentence reduction.” United States v. Rafidi, 842 F. App’x 1017, 1023 (6th Cir. 2021)

(citing Chavez-Meza, 138 S. Ct. at 1967); see also United States v. Greene, 847 F. App’x 334, 338

(6th Cir. 2021). The Supreme Court, in Chavez-Meza, affirmed the denial of a motion for

resentencing, even where the district court’s barebones form order did not expressly address the

petitioner’s arguments related to the classes he had taken in prison. 138 S. Ct. at 1967. We too

have repeatedly affirmed denials of compassionate-release motions where the district courts did

 -7-
No. 21-1253, United States v. Dent

not respond to defendants’ arguments related to rehabilitative progress and post-conviction

conduct. See, e.g., Rafidi, 842 F. App’x at 1023; United States v. Hogg, No. 20-1846, 2021 WL

2209846, at *2 (6th Cir. June 1, 2021); United States v. Taylor, No. 20-4241, 2021 WL 2182320,

at *2–3 (6th Cir. May 28, 2021).

 Here, as in McGuire and Quintanilla Navarro—where the district court had made cursory

statements that it had “considered petitioner’s motion and had taken into account . . . the § 3553(a)

factors”—“[t]here is no evidence that the court brushed aside” Dent’s arguments. McGuire, 822

F. App’x at 480 (citation omitted); see also Quintanilla Navarro, 986 F.3d at 672. In fact, the

district court’s appointment of defense counsel suggests that it sought a thorough treatment of the

merits, and we have no reason to assume otherwise. See McGuire, 822 F. App’x at 480. The court

made clear that it found that Dent’s “serious drug crimes” and the fact that he “had served less

than half of [his] custodial term[]”weighed against release, concluding that the record contains “no

facts” that warrant a different result.

 Finally, Dent argues that the district court abused its discretion in not considering the fact

that the First Step Act reduced the minimum sentence for his crime of conviction. While the

briefing on this issue is not clear, Dent’s argument appears to be that the combination of the non-

retroactive sentence reduction, along with his medical conditions and rehabilitative efforts,

constitutes extraordinary and compelling circumstances. Because we are affirming on the basis of

the district court’s analysis of the § 3553(a) factors, we need not address this argument (or whether

it is foreclosed by our recent opinion in United States v. Jarvis, 999 F.3d 442, 444 (6th Cir. 2021)).

In any event, even if we construe Dent’s argument here to be that the district court failed to consider

the impact of a reduced sentence in analyzing the § 3553(a) factors, this argument fails. First,

Dent’s argument below, as developed through counsel, was that the First Step Act sentencing

 -8-
No. 21-1253, United States v. Dent

changes made his circumstances extraordinary and compelling; he did not explain how the First

Step Act should affect the court’s consideration of the § 3553(a) factors. Thus, it cannot be said

that the district court neglected to consider Dent’s arguments as they might apply to § 3553.

Moreover, the possible relevance of the First Step Act’s changes may be in analyzing whether the

sentence reflects the seriousness of the offense, affords adequate deterrence, or protects the public,

see Jarvis, 999 F.3d at 445, and all of these were fully considered by the district court. Although

the court did not mention the First Step Act’s reduced sentence in the portion of its opinion

discussing the § 3553(a) factors, it still determined that based on the individual facts of Dent’s

offense and Dent’s criminal history—which features crimes with sentences of up to 40 years—a

decrease in Dent’s sentence is unwarranted.

 The judgment of the district court is affirmed.

 -9-